## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MELISSA JACOBS, ANTHONY D. BERTUCCI, JR., and WAYNE D. PETERS, On Behalf Of Themselves And All Others Similarly Situated, | Civil Action No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| WILLIAM A. COLLINS; DAVID M. FARBER; ISADORE H. MAY; RICHARD J. PISCIOTTA, JR.; ROBERT E. ROTHMAN; ROBERT W. STEIN; DAVID BUTLER; STEPHEN E. HRUBY; CRUSADER SERVICING CORPORATION; ROYAL TAX LIEN SERVICES, LLC; CCTS, LLC; CCTS TAX LIENS I, LLC; CCTS TAX LIENS II, LLC; CCTS CAPITAL LLC; CRESTAR CAPITAL LLC; DSBD, LLC; PRO CAPITAL LLC; MICHAEL FABRIKANT & ASSOCIATES INC.; ROYAL BANCSHARES OF PENNSYLVANIA, INC.; ROTHMAN REALTY CORP.; M.D. SASS INVESTORS SERVICES, INC.; M.D. SASS TAX LIEN MANAGEMENT, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS - III, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS - IV, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS - V, LLC; M.D. SASS MUNICIPAL FINANCE PARTNERS - VI, LLC; ROYAL BANK AMERICA; U.S. BANK, N,A., | |
| Defendants. | |

Plaintiffs, Melissa Jacobs, Anthony D. Bertucci, Jr., and Wayne D. Peters ("Plaintiffs"),

by their attorneys, allege, upon personal knowledge as to themselves and their own acts and upon

1

information and belief based on the investigation of counsel as to all other matters, as follows:

## I.    NATURE OF THE ACTION

1.    Plaintiffs bring this class action for the benefit and protection of themselves and all other similarly situated real property owners in New Jersey who have been harmed by the fraudulent scheme, combination, and/or conspiracy of Defendants (as defined below) in the collusion, price-fixing, and restraint of trade and commerce with regard to the sale of municipal tax liens in New Jersey.

2.    New Jersey requires all real property owners within the state to pay municipal property taxes and other municipal-related charges on a quarterly basis.  When property owners become delinquent on these payments, New Jersey law allows municipalities to sell the delinquent obligations to investors at a public auction, for which the successful bidders receive a "Tax Sale Certificate" ("TSC").  The TSC constitutes a lien against real property and is recorded at the local register of deeds.  The benefits and rights conferred by the TSC to the successful bidder are significant and lucrative – the successful bidder gets a first priority lien on the real property at issue, the right to collect on the delinquent obligation, interest and penalties, and the right to foreclose on the real property in order to collect the property tax obligation.

3.    TSC auctions occur once a year in each of New Jersey's municipalities.  By law, the opening bid for every municipal tax lien that is put up for sale must open with the statutory maximum interest rate of 18%, which, assuming a truly competitive bidding process, would decrease to a much lower interest rate, including 0%, which is better for the property owner.

4.    Since at least the beginning of 1998 through the present ("Class Period"), however, TSC auctions have been far from competitive as a result of the illegal acts of Defendants.  Specifically, Defendants entered in an illegal agreement, combination or

2

conspiracy to eliminate bidding at the auctions and ensure that the opening interest rate bid remained at 18%.  To facilitate and execute this purpose, Defendants met prior to each auction, allocated amongst themselves the tax liens to be auctioned, and agreed to refrain from bidding on those tax liens not allocated to them.  As a result, the exclusive and winning bid for each municipal tax lien purchased by Defendants would carry the maximum 18% interest rate.

5.      Defendants' illegal conduct, as alleged herein, has resulted in New Jersey property owners being forced to pay artificially inflated interest rates, or else face the prospect of foreclosure.

6.      Defendants' illegal conduct is the subject of an ongoing criminal investigation conducted by the Department of Justice Antitrust Division's New York field office and the Federal Bureau of Investigation's Atlantic City, New Jersey, office.  To date, nine of the Defendants have pled guilty to the violations of the Sherman Act alleged herein and admitted to participating in the conspiracy alleged.

7.      Plaintiffs assert claims on behalf of themselves and the Class against Defendants for violations of Section 1 of the Sherman Act (15 U.S.C. § 1) (the "Sherman Act"); violations of the New Jersey Antitrust Act, N.J.S.A. 56:9-1, *et seq*. (the "New Jersey Antitrust Act"); and unjust enrichment under New Jersey law.

8.      Plaintiffs seek injunctive relief, declaratory relief, actual damages, restitution and/or disgorgement of profits, statutory damages, including, but not limited to, treble damages, attorneys' fees and costs, and all other relief available to Plaintiffs and the Class as defined herein.

## II.      <u>JURISDICTION AND VENUE</u>

9.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C.

§§ 4 and 15 and 28 U.S.C. §§ 1331 and 1337, in that this action arises under the federal antitrust laws.  The Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because the amount in controversy for the Class exceeds $5,000,000, and there are members of the Class who are citizens of a different state than Defendants.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) and Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, because Defendants reside, transact business, and/or are found within this District, and a substantial part of the events giving rise to the claims arose in this District.

## III.   PARTIES

### A.   Plaintiffs

11.     Plaintiff, Melissa Jacobs ("Jacobs"), is a resident and citizen of New Jersey, and owns the real property located at 307 Rosemont Avenue, Newfield, New Jersey, 08344.  A TSC was issued with respect to Jacobs' property on June 25, 2008, and was purchased by Defendants, U.S. Bank N.A. and M.D. Sass Municipal Finance Partners - V, LLC, pursuant to the conspiracy alleged herein.  As a direct result of Defendants' conduct alleged herein, the interest rate on Jacobs' lien was artificially inflated and she was damaged thereby.

12.     Plaintiff, Anthony D. Bertucci, Jr. ("Bertucci"), is a resident and citizen of New Jersey, and owns the real property located at 118 Pearl Street, Newfield, New Jersey, 08344.  A TSC was issued with respect to Bertucci's property on September 27, 2006, and was purchased by Defendant, CCTS Tax Liens I, LLC, pursuant to the conspiracy alleged herein.  As a direct result of Defendants' conduct alleged herein, the interest rate on Bertucci's lien was artificially inflated and he was damaged thereby.

13.     Plaintiff, Wayne D. Peters ("Peters"), is a resident and citizen of New Jersey, and

owns the real property located at 5 Rena Street, Newfield, New Jersey, 08344. A TSC was issued with respect to Peters' property on June 25, 2008 and was purchased by Defendant, CCTS Tax Liens I, LLC, pursuant to the conspiracy alleged herein. As a direct result of Defendants' conduct alleged herein, the interest rate on Peters' lien was artificially inflated and he was damaged thereby.

**B.**      **Defendants**

14.      Defendant, William A. Collins ("Collins"), is an individual residing in Medford, New Jersey. During the Class Period, Collins knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy. On August 24, 2011, Collins pled guilty to a one-count criminal information charge of conspiracy in violation of the Sherman Act.

15.      Defendant, David M. Farber ("Farber"), is an individual residing in Cherry Hill, New Jersey. During the Class Period, Farber knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy. On February 23, 2012, Farber pled guilty to a one-count criminal information charge of conspiracy, in violation of the Sherman Act.

16.      Defendant, Isadore H. May ("May"), is an individual residing in Margate City, New Jersey. During the Class Period, May knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy. On August 24, 2011, May pled guilty to a one-count criminal information charge of conspiracy in violation of the Sherman Act.

17.      Defendant, Richard J. Pisciotta, Jr. ("Pisciotta"), is an individual residing in Long Beach Township, New Jersey. During the Class Period, Pisciotta knowingly participated in the

conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.  On August 24, 2011, Pisciotta pled guilty to a one-count criminal information charge of conspiracy, in violation of the Sherman Act.

18.     Defendant, Robert E. Rothman ("Rothman"), is an individual residing in New York, New York.  During the Class Period, Rothman knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.  On March 27, 2012, Rothman pled guilty to a one-count criminal information charge of conspiracy, in violation of the Sherman Act.

19.     Defendant, Robert W. Stein ("Stein"), is an individual residing in Huntingdon Valley, Pennsylvania.  Along with Defendant, Royal Bancshares of Pennsylvania, Inc. ("Royal Bancshares"), Stein owned Defendants, Crusader Servicing Corporation ("Crusader Servicing") and Royal Tax Lien Services, LLC ("RTLS").  Stein was also the President of both entities until approximately November 2010, when he was terminated as a result of his participation in the conspiracy alleged herein.  During the Class Period, Stein knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.  On February 23, 2012, Rothman pled guilty to a one-count criminal information charge of conspiracy, in violation of the Sherman Act.

20.     Defendant, David Butler ("Butler"), is an individual residing in Cherry Hill, New Jersey.  During the Class Period, Butler knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.  On April 23, 2012, Butler pled guilty to a one-count criminal information charge of conspiracy, in violation of the Sherman Act.

21.     Defendant, Stephen E. Hruby ("Hruby"), is an individual residing in Hainesport,

New Jersey.  During the Class Period, Hruby knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.  On April 17, 2012, Hruby pled guilty to a one-count criminal information charge of conspiracy, in violation of the Sherman Act.

22.     Defendant, Crusader Servicing is a Pennsylvania corporation with its principal place of business at 732 Montgomery Avenue, Narberth, Pennsylvania.  During the Class period, Stein was the President and Treasurer of Crusader Servicing.  Crusader Servicing is majority owned by Royal Bancshares.  During the Class Period, Crusader knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

23.     Defendant, RTLS, is a Pennsylvania limited liability company, with its principal place of business at 732 Montgomery Avenue, Narberth, Pennsylvania.  RTLS is majority owned by Royal Bancshares.  During the Class Period, RTLS knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

24.     For all practical purposes and within the internal corporate structure of Royal Bancshares, RTLS and Crusader Servicing operated in tandem, and never maintained identities separate from each other or from Royal Bancshares.  They have instead only functioned, and intentionally self-identified, as the "tax lien division" of Royal Bancshares.

25.     Defendant, CCTS, LLC ("CCTS"), is a New Jersey limited liability company with its principal place of business at 1415 Route 70 East, Cherry Hill, New Jersey.  During the Class Period, CCTS purchased TSCs in the State of New Jersey and knowingly participated in the conspiracy alleged herein.

26.     Defendant, CCTS Tax Liens I, LLC ("CCTSI"), is a New Jersey limited liability company with its principal place of business at 1415 Route 70 East, Cherry Hill, New Jersey.  During the Class Period, CCTSI knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

27.     Defendant, CCTS Tax Liens II, LLC ("CCTSII"), is a New Jersey limited liability company with its principal place of business at 1415 Route 70 East, Cherry Hill, New Jersey.  During the Class Period, CCTSII knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

28.     Defendant, CCTS Capital LLC ("CCTS Capital"), is a New Jersey limited liability company with its principal place of business at 1415 Route 70 East, Cherry Hill, New Jersey.  During the Class Period, CCTS Capital knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

29.      Defendant, Crestar Capital LLC ("Crestar"), is a Delaware limited liability company, with its principal place of business at 1415 Route 70 East, Cherry Hill, New Jersey.  Crestar is the successor company to Defendant, CCTS Capital.

30.     Defendant, DSBD, LLC ("DSBD"), is a New Jersey limited liability company with its principal place of business in Voorhees, New Jersey.  During the Class Period, DSDB knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.  On April 23, 2012, DSBD pled guilty to a one-count criminal information charge of conspiracy in violation of the Sherman Act.

31.     Defendant, Pro Capital LLC ("Pro Capital"), is a New Jersey limited liability company with its principal place of business at 1913 Greentree Road, Cherry Hill, New

Jersey.  During the Class Period, Pro Capital knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

32.     Defendant, Michael Fabrikant & Associates Inc. ("MFA"), is a New Jersey corporation with its principal place of business in Freehold, New Jersey.  During the Class Period, MFA knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

33.     Defendant, Royal Bancshares, is a Pennsylvania corporation with its principal place of business located at 732 Montgomery Avenue, Narberth, Pennsylvania.  Royal Bancshares is engaged in, among other things, commercial banking services and the purchase of TSCs in the State of New Jersey.  Royal Bancshares indirectly owns and controls Defendants, RTLS and Crusader Servicing.  During the Class Period, Royal Bancshares dominated and controlled the finances and decision-making processes at RTLS and Crusader Servicing.  During the Class Period, RBPI knowingly participated in the conspiracy alleged herein and purchased, either directly or indirectly, TSCs in the State of New Jersey pursuant to the conspiracy.

34.     Defendant, Rothman Realty Corp. ("Rothman Realty"), is a New Jersey corporation with its principal place of business at 411 Grand Avenue, Englewood, New Jersey 07631.  Rothman Realty is owned by Defendant, Rothman.  During the Class Period, Rothman Realty knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

35.     Defendant, M.D. Sass Investors Services, Inc. ("M.D. Sass Investors Services"), is a Delaware corporation with its principal place of business New York, New York.  During the Class Period, M.D. Sass Investors Services knowingly participated in the

conspiracy alleged herein and purchased, either directly or indirectly, TSCs in the State of New Jersey pursuant to the conspiracy.

36.     Defendant, M.D. Sass Tax Lien Management, LLC ("M.D. Sass Tax Lien Management"), is a New York limited liability company with its principal place of business in New York, New York.  During the Class Period, M.D. Sass Tax Lien Management knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

37.     Defendant, M.D. Sass Municipal Finance Partners - III, LLC ("M.D. Sass Municipal III"), is a Delaware limited liability company with its principal place of business in New York, New York.  During the Class Period, M.D. Sass Municipal III knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

38.     Defendant, M.D. Sass Municipal Finance Partners - IV, LLC ("M.D. Sass Municipal IV"), is a Delaware limited liability company with its principal place of business in New York, New York.  During the Class Period, M.D. Sass Municipal IV knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

39.     Defendant, M.D. Sass Municipal Finance Partners - V, LLC ("M.D. Sass Municipal V"), is a Delaware limited liability company with its principal place of business in New York, New York.  During the Class Period, M.D. Sass Municipal V knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

40.     Defendant, M.D. Sass Municipal Finance Partners - VI, LLC ("M.D. Sass

Municipal VI"), is a Delaware limited liability company with its principal place of business in New York, New York.  During the Class Period, M.D. Sass Municipal VI knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

41.    Defendant, Royal Bank America ("RBA"), is a Pennsylvania financial institution with its principal place of business in Jenkintown, Pennsylvania.  During the Class Period, RBA knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

42.    Defendant, U.S. Bank N.A. ("U.S. Bank"), is a nationally chartered bank with its principal place of business in Minneapolis, Minnesota.  The parent company of U.S. Bank is U.S. Bancorp, a Delaware corporation with its headquarters in Minneapolis, Minnesota.  During the Class Period, U.S. Bank knowingly participated in the conspiracy alleged herein and purchased TSCs in the State of New Jersey pursuant to the conspiracy.

43.    Various other persons, firms or corporations not yet named as defendants in this lawsuit participated as co-conspirators with Defendants in the offenses alleged and performed acts and made statements to advance these offenses.

44.    Whenever in this Complaint reference is made to any act, deed or conduct of a corporate defendant, the allegation means that defendant engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of such corporate defendant.

IV.     **FACTUAL BACKGROUND**

A.      **New Jersey Municipal Tax Lien System**

45.     In New Jersey, all real property owners are required to pay certain property taxes and other municipal charges to the municipality in which the property is located.  For property owners who fail to make such payments, New Jersey statutory law establishes a mechanism for the sale of their delinquent tax obligations.

46.     Title 54, Sub. 2, Chapter 5 of the New Jersey Revised Taxes, N.J.S.A. 54:5-1, *et seq.*, known as the "Tax Sale Law" ("TSL"), governs the "Creation, Enforcement and Collection of Liens for Unpaid [Real Estate] Taxes and Other Municipal Liens on Real Property."  In order to facilitate the collection of taxes and other charges by municipalities, the TSL establishes municipal tax liens as a legal restriction on real property.  Specifically, the law provides that all taxes on real property shall operate as a continuous lien on such property, and all subsequent taxes, interests, penalties and costs of collection shall be added to and become part of such lien.  The lien is superior to all other interests in the real property, including any lien that any mortgagor has on the property.

47.     At least annually, each of New Jersey's municipalities is required to hold a public auction in which the delinquent tax and other municipal obligations owed by a property owner are sold.  The delinquent obligations auctioned and purchased by investors are referred to as a TSC.  Bidders at these auctions include individuals, companies, corporate entities, banks, or other financial institutions.  The auctions are a form of commerce in New Jersey due to the fact that buyers of the liens are often non-residents and/or the funds used to purchase the liens originate from outside of New Jersey.  According to a *Bloomberg News* article dated April 17, 2012, New Jersey municipalities sell

about $100 million a year in local tax debt on commercial and residential property.

48. The prevailing bidder, or holder of a TSC, acquires the municipality's lien, which secures, in addition to the delinquent tax and other payments, any applicable interest and penalties. Thereafter, in the absence of fraud or irregularities in the bidding process, all of the charges related to the lien must normally be paid by the owner of real property to the TSC holder in order to satisfy or redeem the TSC. If, after the statutory two-year period the property owner does not satisfy the lien, the TSC holder has the right to foreclose on the real property and collect the monies associated with the lien.

49. The TSL is a remedial statute. Its purpose is not only to ensure municipal solvency, but also to "prevent frauds in connection with the [sale and] redemption of tax sale certificates" by means of public notice and a competitive bidding process free of favoritism, collusion, or other forms of fraud. *See* N.J.S.A. 54:5-3, 54:5-113.5.

50. To accomplish this purpose, the TSL requires that the bidding on the delinquent obligations being auctioned opens at the maximum interest rate of 18% per annum. The statutory scheme contemplates that, as a result of competitive, collusion-free bidding during the auction process, the opening interest rate of 18% would be driven down to a much lower interest rate, including 0%, such that a winning bid at 18% interest would be the exception, not the rule. As a result of the Defendants' illegal agreement, the opening bid at 18% interest would end up being the only bid, and therefore, the auction would result in the winning bidder having the right to 18% interest on the delinquent tax obligation.

51. In a true competitive bidding scenario, the property owner would receive the benefit of a reasonable interest rate that directly results from the competitive bidding process. By the same token, even with a low interest rate, the TSC purchaser receives

13

significant benefits in the form of, *inter alia*, penalties of 12% collected from the property owner, a first priority lien on the property, and the right to institute foreclosure proceedings. As a result, TSC purchases are considered to be a very lucrative investment opportunity.

**B.   Defendants' Wrongful Conduct**

52.     Since at least January 1998 through the present, Defendants participated in a scheme, combination, and/or conspiracy to rig TSC auctions in New Jersey so that they purchased tax liens at the maximum interest rate of 18%.  As part of this scheme, Defendants agreed to allocate amongst themselves specific tax liens on which each Defendant would bid, and to refrain from bidding on those tax liens not allocated to it.  As a result, there would be no competition for the obligations being auctioned and the opening bid at 18% interest would be the exclusive and, ultimately, successful bid.

53.     Defendants' conduct constitutes an unreasonable restraint of trade and commerce in violation of Section One of the Sherman Act, 15 U.S.C. § 1.

54.     In forming and carrying out their conspiracy, Defendants and their co-conspirators engaged in the following acts, including, *inter alia*:

    a.   attending meetings and engaging in discussions regarding bids for tax liens being auctioned by municipalities in New Jersey;

    b.   agreeing during those meetings and discussions on bids and price quotations on municipal tax liens to be auctioned;

    c.   agreeing during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding;

    d.   submitting bids in accordance with the agreements reached;

    e.   purchasing tax liens pursuant to those agreements at collusive and non-competitive interest rates;

    f.   instructing other bidders under their supervision to attend meetings and engage in discussions regarding bids for tax liens being auctioned by municipalities in New Jersey;

    g.   accepting payments from the owners of the tax lien property at artificially high interest rates; and/or

    h.   pursuing foreclosure action against property owners who could not afford to pay the artificially high interest rates on the municipal tax liens established during the meeting and discussions.

55.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to rig bids and allocate markets for the sale of TSCs in New Jersey.  Indeed, it has been publicly disclosed that, at an auction taking place on March 5, 2007 in the Borough of Newfield, New Jersey, where Plaintiffs herein resided and which many of the Defendants attended, Defendants submitted bids, or refrained from bidding, with respect to the delinquent obligations being auctioned, pursuant to their conspiracy.

**C.**    **Government Investigation And Guilty Pleas**

56.    The misconduct alleged herein has been the subject of an ongoing criminal antitrust investigation.  The investigation is being conducted by the Department of Justice Antitrust Division's New York field office and the Federal Bureau of Investigation's Atlantic City, New Jersey office.

57.    To date, the investigation has resulted in several of the Defendants pleading guilty to a one-count criminal information charge of conspiracy, in violation of the Sherman Act, for their role in price-fixing and bid-rigging in the purchase of municipal tax liens in New Jersey.  These Defendants are as follows:

| **Defendant** | **Criminal Case No.** | **Date of Guilty Plea** |
|---|---|---|
| Isadore H. May | *United States of America v. Isadore H. May*, 2:11-CR-00562 (D.N.J.)(DMC) | August 24, 2011 |
| Richard J. Pisciotta, Jr. | *United States of America v. Richard J. Pisciotta, Jr.*, 11-CR-561 (D.N.J.)(DMC) | August 24, 2011 |
| William A. Collins | *United States of America v. William A. Collins*, 11-CR-563 (D.N.J.)(DMC) | August 24, 2011 |
| David M. Farber | *United States of America v. David M. Farber*, 12-CR-139 (D.N.J.)(DMC) | February 23, 2012 |
| Robert W. Stein | *United States of America v. Robert W. Stein*, 12-CR-140 (D.N.J.)(DMC) | February 23, 2012 |
| Robert E. Rothman | *United States of America v. Robert E. Rothman*, 12-CR-210 (D.N.J.)(DMC) | March 27, 2012 |
| Stephen E. Hruby | *United States of America v. Stephen E. Hruby*, 12-CR-263-1 (D.N.J.)(DMC) | April 17, 2012 |
| David Butler | *United States of America v. David Butler*, 12-CR-273-1 (D.N.J.) | April 23, 2012 |
| DSBD, LLC | *United States of America v. DSBD, LLC*, 12-CR-274-1 (D.N.J.) | April 23, 2012 |

58.     The criminal information filed for each of the foregoing Defendants, to which they pled guilty, charged as follows:

> . . . [Defendant] and his co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by submitting non-competitive and collusive bids at certain public auctions for tax liens conducted by municipalities within the District of New Jersey . . . The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among [Defendant] and [his or its] co-conspirators, the substantial terms of which were to rig bids for and allocate tax liens being auctioned by municipalities within the District of New Jersey.

59.     The criminal information also charged that Defendants and their co-conspirators carried out the conspiracy by:

    a.   attending meetings and engaging in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey;

    b.   agreeing during those meetings and discussions not to compete at certain tax lien auctions by allocating which tax liens each would bid on or refrain from bidding;

    c.   submitting bids in accordance with the agreements reached;

    d.   purchasing tax liens pursuant to those agreements at collusive and non-competitive interest rates; and

    e.   (in the case of Defendant Hruby) instructing other bidders under his supervision to attend meetings and engage in discussions regarding bids for tax liens being auctioned by municipalities within the District of New Jersey.

60.     The guilty pleas carry a maximum penalty of 10 years in prison and a $1 million fine for each Defendant.

61.     According to Sharis A. Pozen, Acting Assistant Attorney General in charge of the Department of Justice's Antitrust Division: "Because the conspiracies permitted the conspirators to purchase tax liens with limited competition, each conspirator was able to obtain liens which earned a higher interest rate."  Consequently, "Property owners were therefore made to pay higher interest on their tax debts than they would have paid had their liens been purchased in open and honest competition."

## V.     EFFECT/DAMAGES

62.     As a direct and proximate result of the unlawful contract, combination, and conspiracy of Defendants' and their co-conspirators, Plaintiffs and Class members have and continue to be injured in fact, including, *inter alia*, suffering financial damage in their real

17

property during the Class Period.  Defendants' illegal conduct has and continues to harm Plaintiffs and Class members by:  (i) causing them to pay higher accrued interest on their delinquent tax or other municipal debts to release liens on their property; (ii) impairing their property titles or wrongfully encumbering them with excessive liens; (iii) causing them to face impending foreclosure because of their inability to discharge such excessive liens; and/or (iv) causing them to lose title to their real property through a tax sale foreclosure or forced sale because of the excessive accrual of interest.  Had Defendants and their co-conspirators not engaged in the unlawful activities described herein, Plaintiffs and Class members would not have suffered these harms.  The total amount of damages is presently undetermined but is in the millions of dollars.

## VI.   TRADE AND COMMERCE

63.     During the Class Period, Defendants, some of whom are not domiciled in New Jersey, bid on and purchased TSCs in New Jersey, with funds provided by institutions and/or individuals not domiciled in New Jersey.  In addition, Defendants used instrumentalities of interstate commerce, such as telephones and the internet, in furtherance of the contract, combination, and conspiracy alleged herein.  Accordingly, Defendants' business activities with respect to the purchase of TSCs in New Jersey were within the flow of, and were substantially affected by, interstate trade and commerce.

## VII.   FRAUDULENT CONCEALMENT

64.     Defendants' acts of bid-rigging and market allocation in New Jersey, which they perpetrated through the contract, combination, and conspiracy described herein, were inherently self-concealing.  Indeed, Defendants met secretly and among themselves for the purpose of discussing, planning, and carrying out their illegal acts.  Defendants did not

publicize these meetings or conversations, or the agreements discussed at the meetings.

65.    Because Defendants and their co-conspirators actively and fraudulently concealed their illegal acts, neither Plaintiffs nor the Class members had knowledge of their illegal acts, nor could they have discovered Defendants' and their co-conspirators' illegal acts through reasonable diligence.

66.    Plaintiffs and Class members could not and did not learn of Defendants' violations of law, including their anti-trust violations and related conspiracy, until on or around August 24, 2011, when the guilty pleas described above of Defendants May, Pisciotta, and Collins were publicly disclosed.  With these guilty pleas, it was disclosed for the first time to the public that Defendants had engaged in the illicit contract, combination, and conspiracy alleged herein.

67.    Defendants' and their co-conspirators' active and fraudulent concealment of their illegal acts tolled the statute of limitations applicable to the claims of Plaintiffs and the Class.

## VIII.  <u>CLASS ACTION ALLEGATIONS</u>

68.    Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

69.    The Class that Plaintiffs seeks to represent is defined as follows:

> All persons who own real property in the State of New Jersey
> and who had a TSC issued with respect to their real property, that
> was purchased by a Defendant during the Class Period.

70.    Excluded from the Class definition are Defendants and the officers, affiliates, subsidiaries, directors, and employees of Defendants, as well as the judge to whom this case

is assigned.

71.   <u>Numerosity/Impracticability of Joinder</u>:  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendants' possession, custody and control, as well as the TSCs that are recorded in the local register of deeds.

72.   <u>Commonality and Predominance</u>:  There are common questions of law and fact which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, include, but are not limited to the following:

a.   Whether Defendants entered into a contract, combination, or conspiracy to fix the interest rate and other terms of municipal tax liens sold in New Jersey and to allocate bids for the sale of such liens;

b.   Whether Defendants' contact, combination, or conspiracy had the purpose and effect of reducing and unreasonably restraining competition in the market for municipal tax liens;

c.   Whether the contract, combination, or conspiracy alleged herein resulted in the interest rates of the TSCs associated with Plaintiffs' and Class members' real property to be set at artificially inflated levels;

d.   Whether Defendants' conduct violated §1 of the Sherman Act;

e.   Whether Defendants' conduct violated New Jersey state laws;

f.   Whether Plaintiffs and Class members have sustained damages as a result of the acts alleged herein, and, if so, the proper measure and appropriate formula to be applied in determining such damages;

g.   Whether Plaintiffs and the Class are entitled to injunctive, declaratory, and/or other equitable relief; and

h.   Whether Defendants have been unjustly enriched.

73.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the members of the

Class.  Plaintiffs and all Class members have been injured by the same wrongful practices in which Defendants have engaged.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

74.     <u>Adequacy</u>:  Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions involving, *inter alia*, violations of antitrust laws. Neither Plaintiffs nor their attorneys have any interests which are contrary to or conflicting with the Class.

75.     <u>Superiority</u>:  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class

action.  In addition, Defendants have acted or refused to act on grounds generally applicable

to the Class and, as such, final injunctive relief or corresponding declaratory relief with

regard to the members of the Class as a whole is appropriate.

76.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

## IX.   VIOLATIONS OF LAW ALLEGED

### COUNT ONE
**Asserted On Behalf Of Plaintiffs And The Class Against Defendants**
**(Violation of the Sherman Act, 15 U.S.C. § 1)**

77.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if

fully set forth herein.

78.     Beginning at least as early as January 1998 through the present, the exact

dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a

continuing agreement, understanding, contract, combination or conspiracy in restraint of

trade to artificially rig bids for the purchase of municipal tax liens at public auctions in the

United States, including the State of New Jersey, in violation of Section 1 of the Sherman

Act (15 U.S.C. § 1).

79.     As a result of Defendants' unlawful conduct, interest rates associated with

delinquent municipal tax obligations auctioned by municipalities in New Jersey have been

set at artificially inflated levels.

80.     The contract, combination or conspiracy among Defendants consisted of a

continuing agreement, understanding, and concerted action among Defendants and their co-

conspirators.

81.     In formulating and carrying out their contract, combination or conspiracy,

Defendants and their co-conspirators did those things that they combined and

conspired to do, including, *inter alia*:

    a.    Fixing the interest rate, price, and/or other terms of municipal tax liens sold and purchased at municipal auctions;

    b.    Submitting rigged bids for these municipal tax liens;

    c.    Allocating among themselves which municipal tax lien(s) each Defendant would bid on;

    d.    Exchanging information on auctions at which municipal tax liens were sold prior to the auctions;

    e.    Agreeing to refrain from submitting bids for municipal tax liens in accordance with the agreements reached among Defendants; and

    f.    Purchasing municipal tax liens in accordance with the agreements reached among Defendants.

82.    The combination and conspiracy alleged herein had the effect of, among other things, restraining, suppressing, and/or eliminating price competition in the purchase of municipal tax liens in the United States, including the State of New Jersey; fixing, raising, maintaining, and stabilizing at artificially high, noncompetitive levels throughout the United States, including the State of New Jersey, the interest rate and price for municipal tax liens purchased by Defendants and their co-conspirators; and depriving those who must pay the artificially high interest rate and price of the benefit of free and open competition in the market for municipal tax liens.

83.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class have been injured in their businesses and property in that they have paid more interest associated with their delinquent tax obligation than they should have, or, are required to pay artificially inflated interest levels associated with their delinquent tax obligation, than they otherwise would have paid, or be required to pay, in the

absence of Defendants' unlawful conduct.

84.     Plaintiffs and Class members seek equitable and injunctive relief pursuant to

Section 16 of the Clayton Act, 15 U.S.C. § 26, and other applicable law, to correct for the

anticompetitive market effects caused by the unlawful conduct of Defendants, and other

relief so as to assure that similar anticompetitive conduct does not occur in the future.

### COUNT TWO
**Asserted On Behalf Of Plaintiffs And The Class Against Defendants**
**(Violation of State Antitrust Laws)**

85.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if

fully set forth herein.

86.     Beginning at least as early as January 1998 through the present, the exact

dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a

continuing agreement, understanding, contract, combination or conspiracy in restraint of

trade to artificially rig bids for the purchase of municipal tax liens at public auctions in the

State of New Jersey, in violation of New Jersey Antitrust Act, N.J.S.A. 56:9-1, *et seq*.

87.     As a result of Defendants' unlawful conduct, interest rates associated with

delinquent municipal tax obligations auctioned by municipalities in New Jersey, have been

set at artificially inflated levels.

88.     The contract, combination or conspiracy among Defendants consisted of a

continuing agreement, understanding, and concerted action among Defendants and their co-

conspirators.

89.     In formulating and carrying out their contract, combination or conspiracy,

Defendants and their co-conspirators did those things that they combined and conspired to

do, including, *inter alia*:

a.      Fixing the interest rate, price, and/or other terms of municipal tax liens sold and purchased at municipal auctions;

b.      Submitting rigged bids for these municipal tax liens;

c.      Allocating among themselves which municipal tax lien(s) each Defendant would bid on;

d.      Exchanging information on auctions at which municipal tax liens were sold prior to the auctions;

e.      Agreeing to refrain from submitting bids for municipal tax liens in accordance with the agreements reached among Defendants; and

f.      Purchasing municipal tax liens in accordance with the agreements reached among Defendants.

90.      The combination and conspiracy alleged herein had the effect of, among other things, restraining, suppressing, and/or eliminating price competition in the purchase of municipal tax liens in the State of New Jersey; fixing, raising, maintaining, and stabilizing at artificially high, noncompetitive levels throughout the State of New Jersey, the interest rate and price for municipal tax liens purchased by Defendants and their co-conspirators; and depriving those who must pay the artificially high interest rate and price of the benefit of free and open competition in the market for municipal tax liens.

91.      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the other members of the Class have been injured in their businesses and property in that they have paid more interest associated with their delinquent tax obligation than they should have, or, are required to pay artificially inflated interest levels associated with their delinquent tax obligation, than they otherwise would have paid, or be required to pay, in the absence of Defendants' unlawful conduct.

## COUNT THREE
**Asserted On Behalf Of Plaintiffs And The Class Against Defendants**
**(Unjust Enrichment)**

92.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

93.     Defendants have been unjustly enriched by the sale and purchase of the municipal tax obligations of Plaintiffs and Class members as set forth above.

94.     Plaintiffs seek to recover Defendants' unjust enrichment under the law of the State of New Jersey.

95.     Plaintiffs and Class members unknowingly conferred a benefit on Defendants of which Defendants had knowledge since Defendants knowingly engaged in illegal acts to restrain, suppress, and/or eliminate competition in the purchase of municipal tax liens in the United States, including the State of New Jersey.

96.     The circumstances are such that it would be inequitable, unconscionable and unjust to permit Defendants to retain the benefit of these profits that they unfairly obtained from Plaintiffs and Class members.

97.     Plaintiffs and Class members, having been damaged by Defendants' conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of Defendants to their detriment.  Plaintiffs and Class members are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and Class members may make claims on a *pro rata* basis.

## X.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment against Defendants granting the following relief:

A.    An order certifying this case as a class action and appointing Plaintiffs' counsel to represent the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    An order that the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, constitutes a *per se* violation of Section One of the Sherman Act, 15 U.S.C. § 1;

C.    An order that the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, constitutes a *per se* violation of the New Jersey Antitrust Act;

D.    An injunction preliminarily and permanently enjoining Defendants from engaging in the illegal conduct described herein;

E.    Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment, to the victims of such violations;

F.    All recoverable compensatory and other damages sustained by Plaintiffs and the Class;

G.    Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class in the maximum amount permitted by applicable law;

H.    An award of three times the amount of damages sustained by Plaintiffs and members of the Class, as permitted by applicable law;

I.    An award of the costs of this action, including reasonable attorneys' fees as may be permitted by applicable law;

J.    Statutory pre-judgment and post-judgment interest on any amounts; and

K.      Such other relief as the Court may deem just and proper.

**XI.      <u>JURY TRIAL DEMAND</u>**

Plaintiffs demand trial by jury on all issues so triable.


Dated:  June 18 , 2012                            Respectfully submitted,

<u>/s/Natalie Finkelman Bennett</u>
James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
475 White Horse Pike
Collingswood, NJ 08107
Telephone:  (856) 858-1770
Facsimile:  (856) 858-7012
Email:  jshah@sfmslaw.com
          nfinkelman@sfmslaw.com

James J. McEldrew, III, Esquire
McEldrew Law
123 S. Broad Street
Suite 1920
Philadelphia, PA  19109
Telephone:  (215) 545-8800
Facsimile:  (215) 545-8805


James E. Miller
Laurie Rubinow
Karen M. Leser-Grenon
SHEPHERD FINKELMAN MILLER &
SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone:  (860) 526-1100
Facsimile:  (860) 526-1120
jmiller@sfmslaw.com
lrubinow@sfmslaw.com
kleser@sfmslaw.com

Attorneys for Plaintiffs and the Proposed Class